UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY COLLETTA, R.N., | Civil Action No. 17-cv-06652-SJF-GRB |
| Plaintiff, | |
| -against- | |
| NORTHWELL HEALTH; PECONIC BAY MEDICAL CENTER; ET AL., | |
| Defendants. | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS NORTHWELL HEALTH, PECONIC BAY MEDICAL CENTER, ANDREW MITCHELL, STEPHANIE RUSSO, MONICA CHESTNUT RAULS, MELISSA TRUCE, AND ELISSA FRANKLIN'S MOTION TO DISMISS THE CONSOLIDATED AMENDED "VERIFIED"[1] COMPLAINT

---

[1] Although captioned as a Consolidated Amended "Verified" Complaint, it is, in fact, not verified, and the Federal Rules of Civil Procedure do not provide for the filing of a "Verified" Complaint.

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ......................................................................................... iii

I.     PRELIMINARY STATEMENT ......................................................................... 1

II.    PROCEDURAL HISTORY................................................................................ 2

III.   STATEMENT OF FACTS ................................................................................. 3

IV.    ARGUMENT ..................................................................................................... 5

       A.     The CAC Must Be Dismissed Because Plaintiff Exceeded The Scope Of
              Leave Granted To Her To File A CAC................................................... 5

       B.     Plaintiff's Amended Complaint Must Be Dismissed Because It Fails To
              Comply With FRCP 8.............................................................................. 6

       C.     Plaintiff Has Pled Contradictory Allegations Regarding Whether Her
              ADEA And ADA Claims Were Timely Filed ....................................... 8

       D.     The CAC Must Be Dismissed For Failure To State A Claim As To All
              Northwell Defendants ............................................................................. 8

              1.     Plaintiff's ADA Discrimination Claim (Second Cause of Action)
                     Must be Dismissed ....................................................................... 9

                     a.     Plaintiff Failed to Exhaust her Administrative Remedies
                            with Respect to Her Failure to Reasonably Accommodate
                            Claim................................................................................. 9

                     b.     Plaintiff Has not Stated a Prima Facie Case that Northwell
                            Failed to Reasonably Accommodate Her Alleged Disability ...... 10

              2.     Plaintiff Waived Her ADA Claims Because She Elected to File a
                     Claim Under Section 741 of the New York Labor Law ......................... 11

              3.     Plaintiff's Disability Harassment Claim (Fourth Cause of Action)
                     Must be Dismissed ....................................................................... 12

              4.     Plaintiff's ADA Interference Claim (Fifth Cause of Action) Must
                     Be Dismissed ............................................................................... 13

              5.     Plaintiff's FMLA Interference Claim (Sixth Cause of Action) Must
                     be Dismissed Because she Fails to State a Prima Facie Case................. 14

TABLE OF CONTENTS
(CONTINUED)

PAGE

6.    Plaintiff's Title VII Retaliation Claim (Seventh Cause of Action) Must Be Dismissed ................................................................................ 18

7.    Plaintiff's ERISA Claim (Eighth Cause of Action) Must Be Dismissed .......................................................................................... 18

    a.    Plaintiff May Not Premise Her Claim on the Alleged Failure to Pay Accrued Sick and Vacation Benefits ................... 18

    b.    Plaintiff Has Not Identified Any Information Covered by ERISA that Northwell Failed to Supply ..................................... 20

8.    Plaintiff's Section 741 Claim (Twelfth Cause of Action) Must Be Dismissed as to Individual Defendants Mitchell and Russo .................. 20

9.    Plaintiff's Intentional Infliction of Emotional Distress Claim (Thirteenth Cause of Action) Must Be Dismissed .................................. 21

E.    Plaintiff's Claims Against All Individual Defendants Must Be Dismissed And They Should Be Removed As Parties To This Litigation Because Plaintiff Failed To File Proof Of Service With The Clerk Of The Court And The Complaint States No Viable Claims Against Them ........................... 23

1.    Plaintiff Failed to File Proof of Service With the Court ......................... 23

2.    Plaintiff States No Viable Claims Against the Individual Defendants ....................................................................................... 25

V.    CONCLUSION ............................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. National Grid, PLC,*
    93 F. Supp. 3d 120 (E.D.N.Y. 2015) ....................................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................8, 9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................8, 9

*Bergman v. Kids By the Bunch Too, Ltd.,*
    14-cv-5005 (DRH)(SIL), 2018 WL 1402249 (E.D.N.Y. Feb. 16, 2018) ...........................15

*Brown v. The Pension Bds.,*
    488 F. Supp. 2d 395 (S.D.N.Y. 2007)..............................................................17

*Butts v. City of New York Dep't of Hous. Preserv. & Dev.,*
    990 F.2d 1397 (2d Cir. 1993)............................................................................9

*Chembo v. Time Warner,*
    282 F.3d 147 (2d Cir. 2002)............................................................................10

*Cohn v. KeySpan Corp.,*
    713 F. Supp. 2d 143 (E.D.N.Y. 2010) (Feuerstein, J.) ...................................9

*Colletta v. Northwell Heath, et al.,*
    No. 2:18-cv-02677-SJF-ARL ..........................................................................1

*Davis v. New York City Dep't of Corrs.,*
    17-CV-3863 (MKB), 2017 WL 5634123 (E.D.N.Y. Nov. 22, 2017)..................18

*Deravin v. Kerik,*
    335 F.3d 195 (2d Cir. 2003)............................................................................10

*Discover Grp., Inc. v. Lexmark Intern., Inc.,*
    333 F. Supp. 2d 78 (E.D.N.Y. 2004) ..............................................................10

*Doyle v. United Airlines, Inc.,*
    914 F. Supp. 2d 325 (E.D.N.Y. 2012) ............................................................19

*EEOC v. Day & Zimmerman NPS, Inc.,*
    265 F. Supp. 3d 179 (D. Conn. 2017)..............................................................13

*Geldzahler v. New York Med. Coll.*,
　746 F. Supp. 2d 618 (S.D.N.Y. 2010)...................................................................................20

*Giambattista v. American Airlines, Inc.*,
　5 F. Supp. 3d 284 (E.D.N.Y. 2014) ....................................................................................12

*Gomez v. North Shore Long Island Jewish Health Sys.*,
　No. 13–CV–2394 (SJF)(ARL), 2014 WL 437331 (E.D.N.Y. Sept. 3, 2014)
　(Feuerstein, J.)......................................................................................................................22

*Guan N. v. New York City Dep't of Educ.*,
　No. 11 Civ. 4299(AJN), 2013 WL 67604 (S.D.N.Y. Jan. 7, 2013)....................................22

*Harris v. Mills*,
　572 F.3d 66 (2d Cir. 2009)....................................................................................................9

*Hoffman v. Williamsville Sch. Dist.*,
　443 F. App'x 647 (2d Cir. 2011) ...........................................................................................9

*Holowecki v. Federal Exp. Corp.*,
　440 F. 3d 558 (2d Cir. 2006).................................................................................................8

*Hong Yin v. North Shore LIJ Health Sys.*,
　20 F. Supp. 3d 359 (E.D.N.Y. 2014) ..................................................................................13

*Howell v. N.Y. Post Co.*,
　81 N.Y.2d 115, 612 N.E.2d 699 (1993)...............................................................................22

*Howley v. Town of Stratford*,
　217 F.3d 141 (2d Cir.2000)..................................................................................................12

*Ibraheem v. Wackenhut Servs., Inc.*,
　29 F. Supp. 3d 196 (E.D.N.Y. 2014) ..................................................................................22

*Infanti v. Scharpf*,
　No. 06 cv 6552 (ILG), 2008 WL 2397607 (E.D.N.Y. June 10, 2008) ..................................7

*Jones v. Nat'l Commc'ns & Surveillance Networks*,
　266 Fed. App'x 31 (2d Cir. 2008)..........................................................................................6

*Locorriere v. NBTY, Inc.*,
　No. 13-CV-7277, 2016 WL 625618 (E.D.N.Y. Feb. 17, 2016) ............................................12

*Lonesome v. Lebdeff*,
　141 F.R.D. 397 (1992) ......................................................................................................6, 7

*Magadia v. Napolitano*,
　No. 06 Civ. 14386(CM), 2009 WL 510739 (S.D.N.Y. Feb. 26, 2009) ..................................12

*Murphy v. Am. Home Prods. Corp.*,
    461 N.Y.S.2d 232 (1983) ........................................................................................22

*Pipia v. Nassau County*,
    34 A.D.3d 664 (2d Dept. 2006) ......................................................................11, 23

*Pope v. Rice*,
    No. 04 Civ. 4171 (DLC), 2005 U.S. Dist. LEXIS 4011 (S.D.N.Y. Mar. 14,
    2005) ...................................................................................................................24

*Reddy v. Catone*,
    No. 5:13-CV-707 (MAD)(ATB), 2014 WL 2611351 (N.D.N.Y. June 11,
    2014) .....................................................................................................................7

*Ruiz v. Lenox Hill Hosp.*,
    146 A.D.3d 605 (1st Dept. 2017) .........................................................................20

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988) ...............................................................................6, 7

*Sanitation & Recycling Indus., Inc. v. City of New York*,
    No. 96 CIV. 4134 (MP), 1996 WL 316418 (S.D.N.Y. June 10, 1996) ...................7

*Semper v. New York Methodist Hosp.*,
    786 F. Supp. 2d 566 (E.D.N.Y. 2011) .................................................................22

*Shea v. Wells Fargo Armored Svc. Corp.*,
    637 F. Supp. 73 (E.D.N.Y. 1986) ........................................................................19

*Shea v. Wells Fargo Armored Svc. Corp.*,
    810 F.2d 372 (2d Cir. 1987) ................................................................................19

*Tekula v. Bayport-Blue Point Sch. Dist.*,
    295 F. Supp. 2d 224 (E.D.N.Y. 2003) .................................................................21

*Tiberio v. Allergy Asthma Immunology of Rochester*,
    664 F.3d 35 (2d Cir. 2011) (ADA) ........................................................................8

*Trachtenberg v. Dep't of Educ. of City of New York*,
    937 F. Supp. 2d 460 (S.D.N.Y. 2013) .................................................................12

*United Auto., Aerospace & Agr. Implement Workers of America, Local 33 v. R.E.
Dietz Co.*,
    996 F.2d 592 (2d Cir. 1993) ................................................................................19

*Wharton v. Duke Realty, LLP*,
    467 F. Supp. 2d 381 (S.D.N.Y. 2006) .................................................................18

**Statutes**

29 U.S.C. § 626(e) .................................................................................................8

29 U.S.C. § 1332(c) .............................................................................................20

29 U.S.C. § 2611(11) ...........................................................................................14

29 U.S.C. § 2612(a)(1)(D) ...................................................................................14

42 U.S.C. 2000e-3(a) ...........................................................................................18

42 U.S.C. § 2000e-2(a)(1) ...................................................................................18

42 U.S.C. § 2000e-5(f)(1) ...............................................................................8, 18

42 U.S.C. § 12203(b) ...........................................................................................13

42 U.S.C. § 621, *et seq.* .......................................................................................8

42 U.S.C. § 12101, *et seq.* ...................................................................................8

29 U.S.C. § 1132(a)(1)(B) ...................................................................................18

29 U.S.C. § 2601, *et seq.* ...................................................................................13

29 U.S.C. § 185 ....................................................................................................19

N.Y. C.P.L.R. § 308 .........................................................................................2, 24

N.Y. Labor Law § 741 .................................................................................*passim*

Rehabilitation Act § 504 ........................................................................................5

**Rules and Regulations**

29 C.F.R. § 825.302(e) .........................................................................................16

29 C.F.R. §§ 102, 113-115 ...................................................................................16

29 C.F.R. § 825.219 ........................................................................................13, 14

29 C.F.R. § 825.302(a) .........................................................................................16

29 C.F.R. § 825.302(c) .........................................................................................17

29 C.F.R. § 825.702(b) .........................................................................................17

Fed. R. Civ. P. 8(a) ................................................................................................6

FED. R. CIV. P. 8(d) ..........................................................................................................6

Fed. R. Civ. P. 15(b)(2)......................................................................................................5

Fed. R. Civ. Pro. 4.......................................................................................................23, 24

Fed. R. Civ. Pro. 8.........................................................................................................6, 9

Fed. R. Civ. Pro. 12(b)(5) ................................................................................................24

Fed. R. Civ. Pro. 15(a)(1)(A) ............................................................................................2

## I.    PRELIMINARY STATEMENT

Defendants Northwell Health, Inc. ("Northwell"), Peconic Bay Medical Center (the "Hospital"), Andrew J. Mitchell, Stephanie Russo, Monica Chestnut Rauls, Melissa Truce, and Elissa Franklin (the "Individual Defendants") (collectively, the "Northwell Defendants") bring this motion to dismiss Plaintiff's Consolidated Amended Complaint ("CAC") (ECF No. 44).

After Plaintiff filed a prolix and incomprehensible Amended Complaint that failed to state viable causes of action against the Northwell Defendants,[2] the Northwell Defendants (and, separately, all defendants) moved to dismiss.  While those motions were pending, Plaintiff inexplicably commenced litigation via a separate action [(*Colletta v. Northwell Heath, et al.*, No. 2:18-cv-02677-SJF-ARL (the "Second Action")) in this Court against the same parties (plus Defendant Elissa Franklin) based on primarily the same and related factual allegations.  On June 27, 2018, the Court consolidated the two actions and ordered Plaintiff to file a new pleading consolidating the facts and causes of actions she had previously asserted.  Rather than doing so, however, Plaintiff filed the instant CAC, essentially an entirely new pleading containing dozens of new and modified factual allegations and three new causes of action.  For the reasons set forth below, the CAC must be dismissed.

First, Plaintiff's CAC should be dismissed because it drastically exceeds the scope of the Court's order for a consolidated pleading.  Second, as with the Amended Complaint, it is prolix, with 449 paragraphs, and with repetitive, confusing, and sometimes contradictory allegations.  Third, the CAC and one of Plaintiff's prior pleadings contain contradictory allegations, ultimately suggesting that her age and disability discrimination claims are untimely.  Fourth, despite its length, the CAC is utterly lacking in well-pleaded factual allegations sufficient to support many of Plaintiff's claims.  Fifth, Plaintiff's failure to accommodate claim under the

---

[2] Not including Elissa Franklin, who was not yet named as a defendant in this  matter.

ADA is subject to dismissal for failure to exhaust administrative remedies and due to the election of remedies provision of NY Labor Law Section 741. <u>Sixth</u>, Plaintiff's FMLA claim fails because she did not notify Northwell that her leave was FMLA-qualifying before she took it and, after she advised Northwell of the reason for her leave, Northwell provided her with FMLA paperwork and encouraged her to take FMLA leave. <u>Seventh</u>, Plaintiff's Title VII retaliation claim fails because she does not claim she engaged in any activity protected by Title VII. <u>Eighth</u>, Plaintiff's ERISA claim (in addition to being vague) is preempted by the Labor Management Relations Act. <u>Ninth</u>, Plaintiff's intentional infliction of emotional distress claim is beyond the scope granted by the Court to amend her complaint is time-barred, fails to state a claim, and is subject to dismissal due to the election of remedies provision of NY Labor Law Section 741. <u>Tenth</u>, the Court lacks jurisdiction over Plaintiff's claims against the Individual Defendants because Plaintiff failed to file proof that she served them in accordance with Section 308 of the New York CPLR, and Plaintiff has stated no viable claim(s) against them.

## II.      PROCEDURAL HISTORY

Plaintiff filed a Charge of Discrimination on December 16, 2016 (the "2016 Charge"), and alleges to have received a Notice of Right to Sue on August 14, 2017. CAC ¶¶ 10, 14. Plaintiff filed her original Complaint in this litigation (the "First Action") on November 14, 2017 and served it on Northwell on February 7, 2018. ECF Nos. 1, 7. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Plaintiff had until February 28, 2018 to amend her pleading as of right. The CAC now alleges that Plaintiff filed a second Charge of Discrimination on December 15, 2017 (the "2017 Charge") and received a Notice of Right to Sue on February 1, 2018, *i.e.*, four weeks before her right to amend her pleading in the First Action had expired. CAC ¶¶ 15-16. However, Plaintiff filed an Amended Complaint ("AC") in this action on February 12, 2018 that did not reference the 2017 Charge and did not include any of the issues allegedly raised in it.

ECF No. 8.

On April 6, 2018, the Northwell Defendants (except Franklin, who was not yet a party) moved to dismiss the Amended Complaint.  *See* ECF Nos. 27, 38.  All other Defendants filed motions to dismiss.  *See* ECF Nos. 32, 34.

On May 6, 2018, while the motions to dismiss the First Action were pending, Plaintiff filed the "Second Action."  *See* Second Action, ECF No. 1.  The allegations in the Second Action are purportedly based on the 2017 Charge.  *Id.* ¶¶ 14-15.

During a hearing before the Court on June 27, 2018, Defendants' then pending motions and the issue of consolidating the First and Second Actions were addressed.  *See* 6/27/18 Order Consolidating Cases.  Following the hearing, the Court issued an Order Consolidating Cases in the First Action, denying Defendants' motions to dismiss without prejudice, and ordering Plaintiff to "file a consolidated amended complaint that addresses all facts and claims in both the earlier and later filed actions."  6/27/18 Order Consolidating Cases.  On July 21, 2018, Plaintiff filed a Consolidated Amended Complaint that includes not only the facts and causes of actions that appeared in the First and Second Actions, but also numerous new allegations and three new causes of action.  ECF No. 44.

## III.   STATEMENT OF FACTS[3]

Plaintiff is a current employee of Northwell, and has been on a medical leave of absence since June of 2017.  CAC ¶¶ 20, 371.  In or around June of 2016, Plaintiff's co-workers accused her of bullying.  *Id.* ¶¶ 81, 111.  Plaintiff alleges that around the same time, she reported "safety" issues to Northwell.  *Id.* ¶ 77.  Defendant Russo issued Plaintiff a written warning in connection

---

[3] The Northwell Defendants dispute the factual allegations in the CAC.  However, for purposes of the instant motion only, they will assume, in accordance with applicable law, that the non-conclusory facts asserted by Plaintiff are true.  The Northwell Defendants reserve the right to controvert any and all allegations in Plaintiff's pleading at any subsequent stage in the litigation of this matter.

with the bullying allegation, which was later reduced to a verbal warning.  *Id.* ¶¶ 146, 182.

Russo also removed Plaintiff from an assignment as "Charge Nurse," or "In Charge" nurse,

which had a set shift from 7:00 a.m. to 3:00 p.m.  *Id.* ¶¶ 41, 82.  Plaintiff alleges in the CAC that

this change in her assignment was made in connection with the bullying charges, which she

asserts are false and retaliatory, and that her duties were distributed to other staff, including some

younger nurses and an older nurse. *Id.* ¶¶ 67, 82, 91, 93, 409.  Plaintiff then requested what she

characterizes as an "accommodation" for an alleged disability, seeking to be returned to the

Charge Nurse shift of 7:00 a.m. to 3:00 p.m., but Russo refused.  *Id.* ¶¶ 133-137.  Then, in

November of 2017, Plaintiff met with Defendant Rauls.  *Id.* ¶ 185.  During that meeting, they

discussed whether Plaintiff's recent absences (6 over the course of 3 months) warranted a

disciplinary warning for violating the Hospital's attendance policy.  *Id.* ¶¶ 197, 206.  Rauls also

provided Plaintiff with FMLA forms and "steered [her] in the direction of applying for FMLA

leave." *Id.* ¶¶ 193.  However, Plaintiff alleges that she did not need FMLA leave at that time.

*Id.* ¶ 194.  In addition, she does not allege that she ever completed any FMLA paperwork

requesting leave in connection with her doctors' appointments.  Later, Plaintiff did take medical

leaves of absence, the second of which continues today.  *Id.* ¶¶ 248, 371.  Plaintiff contends that

she is currently on an ADA, not FMLA, leave.  *Id.* ¶¶ 351, 371.  Plaintiff alleges that the

Hospital and Northwell interfered with her FMLA rights by not advising her that she could use

FMLA leave for her doctors' appointments and for disciplining her for not adhering to the

Hospital's attendance policy (*id.* ¶¶ 383-385), and that the Hospital and Northwell also interfered

with her ADA rights by allegedly sending her letters notifying her that she is considered a "key

employee" under the FMLA (*id.* ¶¶ 374-376).

## IV.    ARGUMENT

### A.    The CAC Must Be Dismissed Because Plaintiff Exceeded The Scope Of Leave Granted To Her To File A CAC

In its June 27, 2018 Order, the Court directed Plaintiff to "file a consolidated amended complaint that addresses all facts and claims in both the earlier and later filed actions." *See* 6/27/18 Order.  Instead of doing as the Court directed, Plaintiff filed the present CAC which is replete with new facts and new causes of action.  ECF No. 73.  For example, Plaintiff adds new causes of action for ADA Interference, an alleged violation of Section 504 of the Rehabilitation Act,[4] and Intentional Infliction of Emotional Distress.[5]  *See* CAC ¶¶ 372-378; 433-437; 445-449. Moreover, the CAC contains so many new and revised factual allegations that it constitutes a wholesale re-write.[6]

Plaintiff did not seek leave before amending her pleading beyond the scope of the Court's limited Order or obtain Northwell Defendants' consent to amend, as is required by Fed. R. Civ. P. 15(b)(2).  *See* Declaration of Lisa M. Griffith ("Griffith Decl."), dated September 5, 2018, ¶ 4. Had Plaintiff sought leave or consent, Defendants would have opposed the proposed amendment before it became the operative pleading in the consolidated actions.  Indeed, Plaintiff should not be permitted to use the Court's limited Order as *carte blanche* license to flout the requirements of Rule 15 and file what essentially constitutes an entirely new pleading without leave to do so. As such, the Court should dismiss the CAC in its entirety.

---

[4] In the Second Action, Plaintiff made passing reference to Section 504, but did not plead a cause of action for violation of the statute or include any factual allegations to demonstrate the applicability of Section 504 to Northwell.  (*See* Second Action, ECF No. 1.)

[5] Plaintiff pled claims for *negligent* infliction of emotional distress in both actions, but not *intentional* infliction of emotional distress.  (*See* Second Action, ECF No. 1 at Seventh Cause of Action and the AC in this action at Eleventh Cause of Action.)

[6] For a non-exhaustive, representative sample of Plaintiff's completely new allegations, *see, e.g.*, CAC ¶¶ 39, 44, 49, 57, 60, 64-65, 67-74, 94-96, 117(b), 120-121, 130-131, 134, 144, 170, 171-173, 202-205, 216, 231-237, 241, 248(a), 251, 257, 262, 268-269, 273-274, 276-278, and 281.

**B.     Plaintiff's Amended Complaint Must Be Dismissed Because It Fails To Comply With FRCP 8**

Federal Rule of Civil Procedure 8 provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The Rule further states that "each allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d). These requirements are critical "because unnecessary prolixity in pleadings places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 Fed. App'x 31, 32 (2d Cir. 2008) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (summary order). "Forcing a defendant[] to answer such a pleading would fly in the face of the very process for which Rule 8 exists." *Lonesome v. Lebdeff*, 141 F.R.D. 397 (1992). As such, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power . . . to . . . dismiss the complaint." *Salahuddin*, 861 F.2d at 42.

One of the bases upon which Northwell moved to dismiss Plaintiff's Amended Complaint was its prolixity and utter failure to comply with Rule 8. That pleading was 57 pages long, was comprised of 208 paragraphs, plus dozens of sub-parts, included numerous allegations lacking chronological continuity, included numerous irrelevant allegations, and was so repetitive that it was all but impossible to comprehend. Rather than correct these issues, Plaintiff has literally doubled down, increasing the size of her pleading by 50%. The CAC is now 72 pages long and comprised of an incredible 449 paragraphs. This is quite a stunning increase given that the Complaint in the Second Action contained little that was not already included in the Amended Complaint in the First Action. Moreover, the CAC is even more repetitive and difficult to follow

than the previously filed Amended Complaint.[7]  As such, in accord with well-settled law, the

CAC should be dismissed as prolix.  *See, e.g., Salahuddin*, 861 F.2d at 43 (agreeing that trial

court was within its discretion to dismiss a 15 page, single-spaced complaint containing a

"surfeit of detail"); *Infanti v. Scharpf*, No. 06 cv 6652 (ILG), 2008 WL 2397607, *2 (E.D.N.Y.

June 10, 2008) (dismissing 500+ paragraph rambling complaint); *Lonesome* 141 F.R.D. 397

(dismissing a 63-page complaint as prolix where its length was compounded by poorly-pled,

vague allegations); *Reddy v. Catone*, No. 5:13-CV-707 (MAD)(ATB), 2014 WL 2611351, * 2-3

(N.D.N.Y. June 11, 2014) (dismissing 400+ paragraph complaint as prolix because it was

needlessly long and contained gratuitous allegations, speculative assertions and legal argument,

which "would be enormously wasteful of resources" to sort through); *Sanitation & Recycling

Indus., Inc. v. City of New York*, No. 96 CIV. 4134 (MP), 1996 WL 316418 (S.D.N.Y. June 10,

1996) (dismissing a 60-page, 164 paragraph complaint as prolix where it was "redundant and

argumentative").

        As it would be unfairly burdensome for the Northwell Defendants to respond to

Plaintiff's prolix pleading, the CAC must be dismissed as a matter of law.

---

[7] *See, e.g.*, CAC ¶¶ 236-246 (jumping back and forth in time and reiterating numerous allegations that appear to be entirely or partially redundant of one another, often making it difficult to differentiate between new and repeated allegations; *id.* ¶¶ 81-82, 90, 97, 105, 111, 115, 140 (repeatedly describing, in whole or in part, what appears to be the same allegations that Defendant Russo provided insufficient notice of a disciplinary meeting, intentionally performed a poor investigation, and violated the collective bargaining agreement ("CBA") when removing Plaintiff from the Charge Nurse assignment); ¶¶ 147-18 and 160-16 (repeating identical allegations); *id.* ¶¶ 39, 49 (repeating nearly identical allegations); *id.* ¶¶ 45, 86 (same); *id.* ¶¶ 46, 87 (same); *id.* ¶¶ 54, 88(same); *id.* ¶¶ 75, 80 (same); *id.* ¶¶ 81, 155 (same); *id.*; *id.* ¶¶ 98, 133 (same); *id.* ¶¶ 121, 132 (same); *id.* ¶¶ 117-121 and 131-132 (same).  The CAC also contains allegations that contradict one another (*compare* ¶ 43, alleging that the Charge Nurse assignment was a bargaining unit position subject to the CBA *with* ¶ 49, alleging that Plaintiff individually negotiated the terms, conditions and salary of the Charge Nurse position), and allegations that contradict Plaintiff's prior pleading (*compare* CAC ¶ 111, alleging that Defendant Rauls produced no witness statements regarding Plaintiff's misconduct *with* AC ¶ 48, alleging that Rauls manufactured witness statements).  The CAC is also rife with "facts" that are actually legal conclusions about, among other things, purported violation of the CBA, the FMLA and the ADA.  *See, e.g.* ¶¶ 112, 150, 215.

**C.      Plaintiff Has Pled Contradictory Allegations Regarding Whether Her ADEA And ADA Claims Were Timely Filed**

An employee must initiate litigation under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Age Discrimination in Employment Act, 42 U.S.C. § 621, *et seq.* ("ADEA") within 90 days after receipt of a Notice of Right to Sue, or her claim will be barred.  29 U.S.C. § 626(e) (ADEA); 42 U.S.C. §§ 2000e-5(f)(1), 12117(a) (2012) (ADA); *see also Holowecki v. Federal Exp. Corp.,* 440 F. 3d 558, 563 (2d Cir. 2006) (ADEA); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F. 3d 35, 37 (2d Cir. 2011) (ADA).

Plaintiff asserts in the CAC that she received a Notice of Right to Sue with respect to the ADEA and ADA allegations contained in her 2016 Charge on August 14, 2017, *i.e.*, less than 90 days before filing her original Complaint.  CAC ¶ 14.  However, in her Complaint in the Second Action, Plaintiff alleged that she actually received the Notice of Right to Sue "on or about May 17, 2017," *i.e.*, **181** days before she filed her original Complaint.  *See* Second Action, ECF No. 1 at ¶ 24.  If Plaintiff's allegation in the Second Action is correct, Plaintiff's ADEA and ADA claims were not timely filed and must be dismissed with prejudice.

Plaintiff has not attached the Notice of Right to Sue to any of her pleadings.  *See* First Action ECF Nos. 1, 8, 44 and Second Action, ECF No. 1.  As such, Plaintiff's ADEA and ADA claims arising from any alleged Charge of Discrimination (the First, Second, Third, and Fourth Causes of Action) must be dismissed, or at a minimum, Plaintiff should be required to clarify her contradictory allegations and offer proof that her ADEA and ADA claims were timely filed and are not barred.

**D.      The CAC Must Be Dismissed For Failure To State A Claim As To All Northwell Defendants**

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the requirements a plaintiff must meet in order to plead

a viable claim under Fed. R. Civ. P. 8, and thus survive a 12(b)(6) motion:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

*Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57); s*ee also Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (applying *Twombly/Iqbal* standard). The allegations in the CAC fail to meet this pleading standard and, therefore, the CAC should be dismissed in its entirety.

### 1. Plaintiff's ADA Discrimination Claim (Second Cause of Action) Must be Dismissed

#### a. Plaintiff Failed to Exhaust her Administrative Remedies with Respect to Her Failure to Reasonably Accommodate Claim

Plaintiff's Second Cause of action alleges that Northwell failed to accommodate her alleged disability in violation of the ADA. CAC ¶¶ 332-357. However, Plaintiff failed to identify this claim in her First Charge, and Plaintiff makes no assertion in the CAC that it was alleged in the Second Charge. Therefore, this Court lacks jurisdiction over her failure to accommodate claim under the ADA because she failed to exhaust her administrative remedies.

"Exhaustion of administrative remedies and the timely filing of a complaint with the EEOC are preconditions to filing an ADA action in federal court." *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 155 (E.D.N.Y. 2010) (Feuerstein, J.). A court has jurisdiction to hear only claims "that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Preserv. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (superseded on other grounds). An allegation not set forth in an administrative charge will be barred for failure to exhaust unless it is reasonably related to the allegations in the charge. *See Hoffman v.*

*Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011). The central question is whether the charge of discrimination filed with the EEOC gave the EEOC adequate notice to investigate discrimination on the new basis asserted in the litigation. *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003).

In this action, Plaintiff alleges that Northwell violated the ADA by giving her "the most difficult cases and heaviest workload" in comparison to non-disabled employees and by denying her "robotic training." CAC ¶ 312-313. Although these allegations pre-date Plaintiff's 2016 Charge, Plaintiff notably did not include them or anything like them in the 2016 Charge or, it appears, in her 2017 Charge. *See* CAC ¶¶ 117-118, 309; Declaration of Monica Chestnut Rauls ("Rauls Decl."), dated September 4, 2018, ¶ 3, Exh. A.[8] And when answering the question contained in the filing form for the 2016 Charge, "What did the person/company you are complaining against do? Please check all that apply[,]" Plaintiff did not check the boxes for "Denied me training" or "Gave me different or worse job duties than other workers in my same title." *See id.*, Exh. A, p. 6. Thus, to the extent that Plaintiff's failure to accommodate claim is premised on allegations of difficult case assignments and/or failure to train, such claim must be dismissed as a matter of law for failure to exhaust.[9]

> **b.    Plaintiff Has not Stated a Prima Facie Case that Northwell Failed to Reasonably Accommodate Her Alleged Disability**

To state a *prima facie* claim for failure to accommodate, a plaintiff must show that: (1) she is a person with a disability under the meaning of the ADA; (2) her employer had notice of

---

[8] Any document relied upon and cited by Plaintiff in the CAC, and provided to the Court by Defendants in support of their motion to dismiss, may be considered by the Court on a motion to dismiss without converting the motion to one for summary judgment. *See Chembo v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002); *Discover Grp., Inc. v. Lexmark Intern., Inc.*, 333 F. Supp. 2d 78,82-83 (E.D.N.Y. 2004).

[9] Had Plaintiff moved for leave to amend her pleading to add these new allegations, the Northwell Defendants could have raised the futility of the proposed amendment in the proper procedural context, *i.e.*, opposition to her motion for leave. This is but one example of why Plaintiff's failure to adhere to Rule 15 and the Court's Order regarding consolidation of her pleadings should not be condoned.

her disability; (3) with reasonable accommodation, she could perform the essential functions of her job; and (4) the employer has refused to make such accommodations. *Anderson v. National Grid, PLC*, 93 F. Supp. 3d 120, 131 (E.D.N.Y. 2015). In accord with this standard, Plaintiff's claim is inherently flawed to the extent it is premised on her "accommodation" request that she be returned to the 7:00 a.m. – 3:00 p.m. Charge Nurse shift. *See* CAC ¶¶ 309, 315.

In the CAC, Plaintiff alleges that Northwell purportedly removed her from the 7:00 a.m. – 3:00 p.m. Charge Nurse shift in retaliation for her alleged safety complaint under the New York Labor Law. *See* CAC ¶¶ 41, 83, 133, 309. In other words, Plaintiff claims that Northwell failed to accommodate her request that it reverse its alleged retaliation for being a whistleblower. Such a claim is misplaced an illogical. In order to establish that Defendant failed to accommodate her request to return to the 7:00 a.m. to 3:00 p.m. shift, Plaintiff would have to allege that she had a disability that needed to be reasonably accommodated by providing her with the 7:00-3:00 shift. She makes no such allegations.

### 2. Plaintiff Waived Her ADA Claims Because She Elected to File a Claim Under Section 741 of the New York Labor Law

In any event, Plaintiff's retaliation claim under Section 741 of the New York Labor Law (Twelfth Cause of Action) is based on the exact same alleged safety complaints and the exact same alleged adverse action of failure to accommodate her desired shift, and therefore the Section 741 claim subsumes this aspect of Plaintiff's failure to accommodate claim. Indeed, Section 741 is subject to an election of remedies provision. *See* N.Y.L.L. § 740(7); *Pipia v. Nassau County*, 34 A.D.3d 664, 666 (2d Dept. 2006). Section 740(7) provides that "the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining  agreement, law, rule or regulation or under the common law." Thus, this aspect of Plaintiff's claim is waived and must

also be dismissed as a matter of law.

As a result of Plaintiff's failure to exhaust and her election of Section 741 as her remedy, the entirety of Plaintiff's Second Cause of Action fails and it must be dismissed.

### 3.   Plaintiff's Disability Harassment Claim (Fourth Cause of Action) Must be Dismissed

To assert a plausible hostile work environment claim, the plaintiff must show that her work environment was "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Locorriere v. NBTY, Inc.*, No. 13-CV-7277, 2016 WL 625618, at *10 (E.D.N.Y. Feb. 17, 2016) (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir.2000)).  Evaluating a hostile work environment claim requires "an assessment of the totality of circumstances and includes consideration of the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." *Giambattista v. American Airlines, Inc.*, 5 F. Supp. 3d 284, 294 (E.D.N.Y. 2014) (dismissing ADA harassment claim where plaintiff failed to link a tangible employment action to the harassing behavior).  In contrast to an ADA discrimination or retaliation claim, and ADA harassment claim "is a wholly separate cause of action designed to address other types of work place behavior, like constant jokes and ridicule or physical intimidation."  *Magadia v. Napolitano*, No. 06 Civ. 14386(CM), 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009).

Here, Plaintiff makes no plausible allegations that meet this standard.  Rather, her claim is premised on allegations that her workload increased when she was removed as Charge Nurse, that Northwell had her co-workers "spy on her," and that she was disciplined and threatened with termination.  CAC ¶¶ 362-366.  These allegations – even if true – are simply trivial and petty

work annoyances that cannot support a claim for harassment.  *See, e.g.*, *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 472 (S.D.N.Y. 2013) (holding that allegations of excessive scrutiny, intimidation, "scurrilous charges," and other unpleasant workplace issues "fell well short" of stating a claim for harassment); *Hong Yin v. North Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 371 (E.D.N.Y. 2014) (holding that claims of increased scrutiny, negative feedback and excessive criticism were insufficient to state ADA harassment claim).

### 4.    Plaintiff's ADA Interference Claim (Fifth Cause of Action) Must Be Dismissed

Section 503(b) of the ADA prohibits interference with ADA rights.  42 U.S.C. § 12203(b).  "Neither the Supreme Court nor the Second Circuit has yet outlined a legal test for an interference claim under the ADA."  *EEOC v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 204 (D. Conn. 2017).  Plaintiff's claim is premised on Northwell allegedly having sent Plaintiff a "key employee" letter pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), which purportedly stated that she was not eligible for ADA leave.[10] CAC ¶ 374.  Plaintiff was not designated as a key employee.  Even if she was, Plaintiff's claim fails.

Pursuant to the FMLA, a "key employee" may, under certain circumstances, be denied reinstatement after they have exhausted their available FMLA leave allotment.  29 C.F.R. § 825.219.  Contrary to Plaintiff's assertion that a key employee is not entitled to reinstatement (*see* ECF No. 44 at ¶ 353), the test for whether reinstatement is required is whether doing so would cause "substantial and grievous economic injury to [the employer's] operations."  29 C.F.R. § 825.219(a).  An employer who believes that it might deny reinstatement to a key

---

[10] To the extent that Plaintiff's claim is also based on her allegation that Northwell failed to accommodate her alleged disability (*see* CAC ¶ 377), it is entirely duplicative of her Second Cause of Action for ADA Discrimination, not a unique cause of action.

employee is required to provide written notice to the employee and "fully inform the employee of the potential consequences with respect to reinstatement." 29 C.F.R. § 825.219(a). Critically, the issuance of a key employee letter itself does not have <u>any</u> impact on the employee, who may return from FMLA leave before exhausting her allotted time or continue her leave and request reinstatement at the end of the leave period. 29 C.F.R. § 825.219(c)-(d). At the end of the leave period, the employer is obligated to reassess whether the employee is entitled to reinstatement. 29 C.F.R. § 825.219(c)-(d).

Here, Plaintiff claims that her alleged receipt of FMLA key employee letters (which Northwell disputes) somehow interfered with her ADA medical leave. CAC ¶¶ 373-375. However, the CAC includes no facts to suggest that her alleged receipt of any letter impacted her ability to take medical leave, to return from medical leave, or otherwise hampered any right to which she is entitled under the ADA. Rather, Plaintiff admits that she is currently on an ADA leave of absence.[11] CAC ¶¶ 330, 371. As such, Plaintiff's claim fails on the facts as she herself has alleged them.

### 5. Plaintiff's FMLA Interference Claim (Sixth Cause of Action) Must be Dismissed Because she Fails to State a Prima Facie Case

Under the FMLA, an eligible employee is entitled to up to 12 weeks of leave during a 12 month period due to, among other things, the employee's own serious health condition that makes her unable to perform one or more of the essential functions of her job. 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves— (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

A plaintiff establishes a *prima facie* case of FMLA interference by showing that (1) she is

---

[11] Plaintiff has recently submitted a request to return to work and is in discussions with Northwell about her return. Rauls Decl., ¶ 6.

an eligible employee under the FMLA; (2) the defendant is an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to the defendant of her intention to take leave; and (5) the defendant denied her benefits to which she was entitled by the FMLA. *Bergman v. Kids By the Bunch Too, Ltd*., 14-cv-5005 (DRH)(SIL), 2018 WL 1402249, * 9 (E.D.N.Y. Feb. 16, 2018).  Here, Plaintiff's FMLA interference claim is premised on the 6 absences that were allegedly for doctors' appointments and the discipline she received for violating Northwell's attendance policy.  CAC ¶¶ 383-384.  However, the claim fails because Plaintiff does not allege that she gave notice of her intention to take FMLA leave, and she does not plausibly allege that she was denied any benefit to which she may actually have been entitled.

Plaintiff claims that on November 17, 2016, <u>after</u> she had already been absent 6 times over the course of 3 months, she was questioned about violating the Hospital's sick leave policy. AC ¶¶ 197, 207.  In a meandering set of contradictory allegations, Plaintiff alleges (1) that she first provided documentation <u>during</u> the November 17, 2016 meeting to show that her absences were for doctor's appointments and were FMLA-qualifying (*id.* ¶ 197), (2) that the Hospital had never previously advised her that she could have used FMLA leave for her doctors' appointments (*id.* ¶ 198), and (3) that Defendant Rauls suggested she take FMLA leave and provided forms to her, but she neither wanted nor needed FMLA leave (*id.* ¶ 193-194).  Notably, Plaintiff does not allege that she <u>ever</u> provided the Hospital with any completed FMLA forms in connection with her doctors' appointments, even after she concedes the forms were provided to her.  *See generally* CAC.  In fact, in the November 10, 2016 letter Plaintiff cites in her CAC (CAC ¶ 171), Plaintiff stated "my disability has <u>never</u> caused poor attendance."  Rauls Decl., ¶ 4, Exh. B (emphasis in original).

Plaintiff's claim fails at the outset because she concedes that the Hospital did not deny her the right to attend the six (6) doctors' appointments at issue. *See* CAC ¶ 208. As such, and because the Hospital did not prevent Plaintiff from taking leave, she cannot state a claim.

Furthermore, Plaintiff does not claim to have notified the Hospital of her alleged need to take FMLA leave for doctors' appointments until <u>after</u> she had already taken it. This does not comply with the FMLA, which states that an employee who needs to take leave for foreseeable medical treatment must provide 30 days' notice of her need for leave or, if that is not possible, then as soon as is reasonably practicable. 29 C.F.R. § 825.302(a). In addition, "[e]mployees are ordinarily expected to consult with their employers <u>prior</u> to the scheduling of treatment in order to work out a treatment schedule which best suits the needs of both the employer and the employee." 29 C.F.R. 825.302(e) (emphasis added). Thus, Plaintiff's claim also fails because she does not allege that she notified the Hospital of her need to take FMLA leave.

In an apparent attempt to plead around her own failure to comply with the FMLA (and its fatal impact on her claim), Plaintiff suggests that Defendant Rauls "had reason to know that [her 6 prior] absences were covered under the FMLA" before she provided medical documentation to Northwell during the November 17, 2016 meeting; however, she does not support that conclusory allegation with any facts. CAC ¶ 198. To the contrary, Plaintiff's assertion in her November 10, 2016 letter that her alleged disability had never caused poor attendance flatly contradicts her current allegation that it, in fact, did. *Compare* Rauls Decl., Exh. A *with* CAC ¶¶ 197-198, 206.

Plaintiff also alleges that she gave an OR Manager "written certifications from her doctor" regarding her absences. *Id.* ¶ 381.[12] Critically, the FMLA provides leave only for a

---

[12] In her Amended Complaint, Plaintiff described what she provided as a "certification of disability-related absences." ECF No. 8 at ¶ 149.

"serious health condition," which has a specific definition under the FMLA. It is a condition that requires "inpatient care" or "continuing treatment" as those terms are specifically defined in 29 C.F.R. Sections 102, 113-115. Suffering from a "serious health condition" under the FMLA is not necessarily the same as being "disabled" under the ADA. *See* 29 C.F.R. § 825.702(b) (The "ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately."). Thus, while a particular health condition may qualify as both a "serious health condition" under the FMLA and a "disability" under the ADA, it also may not. As such, Plaintiff's allegation that Northwell knew that she had a "disability" does not mean that her doctors' appointments were FMLA-qualifying. And, of course, if the Hospital did not know that the appointments were FMLA-qualifying, then Plaintiff's allegation that the Hospital did not advise her of her right to use FMLA leave is irrelevant. Most importantly, Plaintiff alleges that Defendant Rauls suggested she take FMLA leave and provided forms to her, but that she neither wanted, nor needed FMLA leave. CAC ¶¶ 193-194. This allegation completely contradicts any plausible interference claim.

Finally, Plaintiff suggests that her entitlement to FMLA was interfered with because the Hospital issued her a written warning for excessive absences. CAC ¶ 383. However, the FMLA requires an employee "to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(c). As such, the FMLA does not bar the Hospital from requiring Plaintiff to adhere to its policies or from disciplining her for failure to do so. *See, e.g.*, *Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 401 (S.D.N.Y. 2007) (granting summary judgment in favor of employer that terminated FMLA plaintiff for failing to comply with call-in attendance policy). Thus, the mere allegation that Plaintiff was disciplined pursuant to the Hospital's sick leave policy is insufficient to save

her otherwise fatally flawed claim under the *Twombly/Iqbal* standard.

**6.     Plaintiff's Title VII Retaliation Claim (Seventh Cause of Action) Must Be Dismissed[13]**

Plaintiff's Seventh Cause of Action purports to state a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII").  The protected activity Plaintiff alleges to have engaged in was filing the 2016 EEOC Charge.  CAC ¶ 389.  In the 2016 Charge, Plaintiff made claims relating to her age and disability.  (Rauls Decl., Exh. A.)  Age and disability are not characteristics that are protected by Title VII.  *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination based on "race, color, religion, sex, or national origin").  Moreover, nowhere in Plaintiff's CAC does she suggest that she complained of conduct that violates Title VII.  Unless Plaintiff engaged in an activity protected by Title VII, she cannot state a claim for retaliation under Title VII.  *See* 42 U.S.C. 2000e-3(a) (prohibiting an employer from retaliating against an employee who engages in activity protected by Title VII); *see also Davis v. New York City Dep't of Corrs*., 17-CV-3863 (MKB), 2017 WL 5634123, * 4 (E.D.N.Y. Nov. 22, 2017) (dismissing claim that did not allege discrimination based on a characteristic protected by Title VII).  Therefore, Plaintiff's retaliation claim much be dismissed.

**7.     Plaintiff's ERISA Claim (Eighth Cause of Action) Must Be Dismissed**

**a.     Plaintiff May Not Premise Her Claim on the Alleged Failure to Pay Accrued Sick and Vacation Benefits**

ERISA § 1132(a)(1)(B) provides that a civil action may be brought:  "(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of his plan."  A plaintiff's right to file suit is determined by whether she is a participant or beneficiary

---

[13] To the extent this claim arises out of the 2016 Charge of Discrimination, it must also be dismissed as untimely if Plaintiff received her Notice of Right to Sue on May 17, 2017 as she alleged in the Second Action or fails to establish the date on which she received such Notice.  *See* 42 U.S.C. § 2000e-5(f)(1).

of an ERISA-covered plan. *See, e.g.*, *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 392-393 (S.D.N.Y. 2006). Critically, ERISA does not apply to "the payment of traditional sick leave and vacation wages out of an employer's general operating assets." *Shea v. Wells Fargo Armored Svc. Corp.*, 810 F.2d 372, 376 (2d Cir. 1987); *see also United Auto., Aerospace & Agr. Implement Workers of America, Local 33 v. R.E. Dietz Co.*, 996 F.2d 592, 597 (2d Cir. 1993) ("Vacation benefits paid from an employer's general assets do not constitute an employee benefit plan under ERISA."). Thus, to the extent that Plaintiff's ERISA claim is premised on the Hospital's alleged failure to pay her accrued vacation and sick time" (*see* CAC ¶ 330), it fails as a matter of law.

Moreover, Plaintiff's entitlement to sick and vacation pay arises from the collective bargaining agreement ("CBA") she identifies in her pleading. (Rauls Decl., ¶ 5, Exh. C. §§ 7.05, 7.06, 7.08, 7.09). A CBA providing for ordinary vacation and sick pay is not an ERISA plan. *Shea v. Wells Fargo Armored Svc. Corp.*, 637 F. Supp. 73, 75-76 (E.D.N.Y. 1986). Thus, Plaintiff's ERISA claim is really nothing more than a garden-variety breach of contract claim based on the CBA. Such a claim is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), because a Plaintiff must first exhaust administrative remedies provided for in a CBA prior to bring suit. *See Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 338 (E.D.N.Y. 2012) ("In general, before an employee may sue her employer for breaching a CBA, that employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."). Plaintiff has not alleged that she grieved the alleged withholding of accrued sick and vacation pay. *See* Rauls Decl., Exh. C, § 12. As such, she failed to exhaust her administrative remedies and her claim must be dismissed as preempted.

**b.**     **Plaintiff Has Not Identified Any Information Covered by ERISA that Northwell Failed to Supply**

Plaintiff also alleges that the Hospital is "refusing to provide her requested information regarding short term and long term disability" and has failed to complete an unidentified form. CAC ¶¶ 354, 399. ERISA provides for penalties to be assessed against a plan administrator for failing to provide specific categories of information addressed in various ERISA provisions. *See* 29 U.S.C. § 1332(c). The CAC fails to state an ERISA claim because, first, it does not allege that Northwell's disability plans are ERISA-covered plans and, second, even if they were, Plaintiff has not identified any information for which ERISA creates a remedy for failure to provide. Plaintiff's claim is, in fact, so vague and poorly pled that it is impossible to guess whether any ERISA provision might apply to it. As such, Plaintiff's claim fails to comply with the *Iqbal/Twombly* pleading standard and must be dismissed.

**8.**     **Plaintiff's Section 741 Claim (Twelfth Cause of Action) Must Be Dismissed as to Individual Defendants Mitchell and Russo**

Plaintiff's claim under New York Labor Law Section 741 is pled against the Hospital, as well as Individual Defendants Russo and Mitchell. Section 741 makes it unlawful for an "employer" to retaliate against an employee who engages in conduct protected by the statute. N.Y.L.L. § 741(2). Critically, Section 741(b) defines "employer" as "any partnership, association, corporation, the state, or any political subdivision of the state which: (i) provides health care services . . . ." Individual persons, even those acting as the agent of an employer, are not included within the definition. *Id.*; *see also Geldzahler v. New York Med. Coll.*, 746 F. Supp. 2d 618, 633 (S.D.N.Y. 2010) (holding that "[b]ecause the prohibition against retaliatory action in Section 741 is not directed at the employer's agents, [the plaintiff's] claim against [an individual defendant] must be dismissed"); *Ruiz v. Lenox Hill Hosp.*, 146 A.D.3d 605, 606 (1st Dept. 2017) (holding that the lower court erred by not dismissing the § 741 claim against an

-20-

individual defendant).

Indeed, Plaintiff's attempt to plead this claim against Russo and Mitchell is inexplicable given her concession, in opposition to the Northwell Defendants' Motion to Dismiss the Amended Complaint, that "[i]t is well settled that plaintiff's [Section 741] action cannot be maintained against individual defendants Mitchell and Russo and [Plaintiff] did not assert that in the Amended Complaint."   ECF No. 38-3 at 24.   Obviously, and as Plaintiff previously conceded, Plaintiff's Section 741 claim against Mitchell and Russo must be dismissed.

### 9.   Plaintiff's Intentional Infliction of Emotional Distress Claim (Thirteenth Cause of Action) Must Be Dismissed

Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") must be dismissed for four reasons.

<u>First</u>, it exceeds the scope of the Court's order for Plaintiff to consolidate her pleadings from the First and Second Actions – both of which included claims only for *negligent*, not *intentional*, infliction of emotional distress – and Plaintiff did not seek leave or consent to amend.

<u>Second</u>, the claim is untimely.   The statute of limitations for an IIED claim is one year and is not tolled by the filing of a Charge of Discrimination.   *Tekula v. Bayport-Blue Point Sch. Dist.*, 295 F. Supp. 2d 224, 234 (E.D.N.Y. 2003).   The latest allegation Plaintiff makes about any conduct that might conceivably form the factual predicate for her claim is her allegation that she was "forced" to take a medical leave of absence in June of 2017.   CAC ¶ 371.   Plaintiff filed her CAC – the first pleading in which she asserts a cause of action for IIED – on July 21, 2018, more than one year later.   As such, the claim is time-barred.

<u>Third</u>, even if Plaintiff's IIED claim were properly before the Court, it would fail to state a claim.   To survive a motion to dismiss, a plaintiff must plead facts alleging conduct that is "so

-21-

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 586 (E.D.N.Y. 2011) (*quoting Murphy v. Am. Home Prods. Corp.*, 461 N.Y.S.2d 232 (1983)).  "The bar is extremely high, and '[t]his highly disfavored cause of action is almost never successful.'" *Id.* (citation omitted); *see also Guan N. v. New York City Dep't of Educ.*, No. 11 Civ. 4299(AJN), 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013) (the cause of action for **intentional infliction of emotional distress** is "extremely disfavored . . . [and] routinely **dismissed** on **pre-answer** motion").  Indeed, the New York Court of Appeals once observed that the "requirements of the rule are [so] rigorous, and difficult to satisfy" that every IIED claim considered by the Court of Appeals "has failed because the alleged conduct was not sufficiently outrageous."  *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 702 (1993). "'Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous.'"  *Semper*, 786 F. Supp. 2d at 586 (citation omitted).  "'[F]ederal courts in New York routinely dismiss claims of [IED] in the employment context, with the only exception being where employment discrimination claims are accompanied by allegations of both sexual harassment and battery.'"  *Gomez v. North Shore Long Island Jewish Health Sys.*, No. 13–CV–2394 (SJF)(ARL), 2014 WL 437331, *4 (E.D.N.Y. Sept. 3, 2014) (Feuerstein, J.) (*quoting Ibraheem v. Wackenhut Servs., Inc.*, 29 F. Supp. 3d 196, 215 (E.D.N.Y. 2014)).  No allegations in this litigation come close to the level of outrageousness necessary to state a claim.

Fourth, although Plaintiff purports to plead the claim against all Individual Defendants, the sole person she makes an allegation against is Defendant Russo.  Thus, there is no plausible

basis to seek to hold any other Individual Defendant liable.  And, as to Russo, who Plaintiff

claims told her "it's my way or the highway" in response to a request that she reverse her

decision to remove Plaintiff from her 7:00 a.m. – 3:00 p.m. shift, Plaintiff already asserted that

such alleged conduct was in retaliation for a purported whistleblower complaint pursuant to

Section 741 of the New York Labor Law.  CAC ¶¶ 97-98, 81, 133-136, 446.  As such, the claim

is, nevertheless, barred by the election of remedies provision in Section 741.  *See* N.Y.L.L. §

740(7); *Pipia*, 34 A.D.3d at 666.

> **E.**    **Plaintiff's Claims Against All Individual Defendants Must Be Dismissed And
> They Should Be Removed As Parties To This Litigation Because Plaintiff
> Failed To File Proof Of Service With The Clerk Of The Court And The
> Complaint States No Viable Claims Against Them**

> **1.**    **Plaintiff Failed to File Proof of Service With the Court**

The Federal Rules of Civil Procedure do not allow for an individual defendant to be

served with the Summons and Complaint at his/her place of business.  Fed. R. Civ. Pro. 4.

However, the Federal Rules of Civil Procedure do allow for service to be completed in any

manner allowed by the rules of the state court in which the federal court is located.  Fed. R. Civ.

Pro. 4 (e)(1).  New York Civil Practice Law and Rules § 308 provides that personal service upon

a natural person can be made by, among other things,

> delivering the summons within the state to a person of suitable age and
> discretion at the actual place of business… of the person to be served and by
> either mailing the summons to the person to be served at his or her last
> known residence or by mailing it by first class mail to the person to be
> served at his or her actual place of business…such delivery and mailing to
> be effected within twenty days of each other; **proof of such service shall be
> filed with the clerk of the court … within twenty days of either such
> delivery or mailing, whichever is effected later, service shall be
> complete tend days after such filing** . . . .

While Plaintiff caused a copy of the Summons and Complaint to be delivered to the

Individual Northwell Defendants (except Elissa Franklin), and by mail, Plaintiff has not filed any

affidavit of service confirming the method of service she used to serve any Individual Defendant. *See* Docket.  Further, Plaintiff does not appear to have attempted to serve the Individual Defendants with the complaint in the Second Action or the CAC, and counsel for Northwell Defendants never accepted service of the complaint in the Second Action or the CAC on behalf of any of the Individual Defendants.  *See* Docket; Griffith Decl. ¶¶ 3, 5.

Given that Plaintiff's purported delivery of the Summons, Complaint, and Amended Complaint was not followed by the filing of an affidavit of service with the clerk of the court within twenty (20) days of such delivery, Plaintiff failed to comply with Section 308 of the New York Civil Practice Law and Rules and Rule 4 (e)(1) of the FRCP.  Indeed, the failure to file proof of service is a jurisdictional defect, and her complaint against the Individual Defendants must be dismissed.  *See Pope v. Rice*, No. 04 Civ. 4171 (DLC), 2005 U.S. Dist. LEXIS 4011, *50-51 (S.D.N.Y. Mar. 14, 2005) ("Because failure to file proof of service is a jurisdictional defect, all claims against Kellman are dismissed due to insufficient service of process.").

In addition, Plaintiff has not made any attempt at all to serve Elissa Franklin, who was added as a party when Plaintiff filed the Second Action on May 5, 2018.  Declaration of Elissa Franklin, ¶ 2.  Thus, the CAC must be dismissed as against the Individual Defendants for insufficient service of process pursuant to Fed. R. Civ. Pro. 12(b)(5).  Moreover, Plaintiff should not be given another opportunity to serve process because she is well beyond the 90-day period of time from the date of filing the Complaint to serve a summons and complaint under Fed. R. Civ. Pro. 4(m).  The original Complaint was filed on November 14, 2017.  As of today, more than 280 days have elapsed since the Complaint was filed without Plaintiff filing any proof of service.  Furthermore, the Northwell Defendants first raised this issue in the Motion to Dismiss they served on Plaintiff on April 6, 2018 (ECF No. 38), over four months ago, and Plaintiff has

refused to rectify her failure to prove that she effectuated service on any Individual Defendant. Plaintiff cannot show good cause for her failure to serve process and, thus, she should not be permitted to extend the time for service

**2.      Plaintiff States No Viable Claims Against the Individual Defendants**

The only causes of action Plaintiff asserts against any Individual Defendant are her Section 741 claim (against Russo and Mitchell) and her IIED (ostensibly against all Individual Defendants, but naming only Russo).  As discussed above, these claims fail.  As such (and because Plaintiff failed to file proof of service) the Court should exercise its inherent power under Rule 21 to dismiss the Individual Defendants from the case.

**V.      CONCLUSION**

Wherefore, Northwell Defendants respectfully request that the Court grant their motion to dismiss the CAC and to drop the Individual Defendants as parties to this litigation.

Dated: September 5, 2018
      Melville, New York

By:   /s/ *Lisa M. Griffith*
      Lisa M. Griffith
      Daniel Gomez-Sanchez
      LITTLER MENDELSON, P.C.
      290 Broadhollow Road, Suite 305
      Melville, New York 11747
      631.247.4700
      631.850.5363 (fax)
      lgriffith@littler.com
      dsgomez@littler.com

      *Attorneys for Northwell Defendants*