UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARY COLLETTA, R.N.,

                      Plaintiff,

              -against-

NORTHWELL HEALTH; PECONIC BAY
MEDICAL CENTER; ANDREW J.
MITCHELL, in his official capacity as
CEO/President Peconic Bay Medical Center
and Northwell Health and Individually;
STEPHANIE RUSSO, in her official capacity
as Associate Executive Director Surgical
Services and Individually; MONICA
CHESTNUT RAULS, in her official capacity
as Vice President of Human Resources, and
Individually; MELLISSA TRUCE, in her
official capacity as Employee Labor Relations
Manager and Individually; ELISSA
FRANKLIN, in her official capacity as
Employee Benefits Manager, Peconic Bay
Medical Center and Northwell Health and
Individually; FROEBAL CHUGATA,
Individually as Regional Director, NYS
DIVISION OF HUMAN RIGHTS,
VLADIMIR SHERMAN, in his official
capacity as Program Representative New York
State Nurses Association and Individually;
and New York State Nurses Association,

                      Defendants.
----------------------------------------------------------X

**REPORT & RECOMMENDATION**
17-CV-6652 (SJF) (GRB)

**GARY R. BROWN, United States Magistrate Judge:**

      Presently before the undersigned, on referral from the Honorable Sandra J. Feuerstein,

are motions to dismiss filed on behalf of all defendants.  For the reasons that follow, the

1

undersigned respectfully recommends the Court grant in part and deny in part those motions.

## **FACTS**

The following facts are taken from the Consolidated Amended Complaint[1] and accepted as true for the purposes of these motions. *Sung Cho v. City of N.Y.*, 910 F.3d 639, 642, n.1 (2d Cir. 2018):

Plaintiff, a 62-year-old woman has been employed, as a registered nurse, since 2007, by defendant Northwell Health, Inc. ("Northwell"), specifically at defendant Peconic Bay Medical Center (the "Hospital"). Docket Entry No. ("DE") 44 at ¶¶ 18–19, 37–38. In 2013, plaintiff was promoted to a Charge Nurse. *Id.* at ¶ 39. This position had set hours from 7:00 a.m. to 3:00 p.m. and came with an annual raise of $12,000. *Id.* at ¶¶ 40–41. Her managerial duties included assigning nurses and technicians to six different operating rooms, serving as a communication liaison, ensuring surgeons were prepared for surgeries, and enforcing hospital health and safety policies. *Id.* at ¶¶ 50–51

Plaintiff also served as the primary nurse covering high acuity obstetrical emergencies. *Id.* at ¶¶ 47–48. She was paid by the Department of Obstetrics and reported to the medical staff of that department. *Id.* at ¶¶ 48–49. Plaintiff had over thirty years of nursing experience, no negative performance evaluations or disciplinary action, and was held in high regard by staff. *Id.* at ¶¶ 45–46, 53–54.

In May 2016, the Hospital hired defendant Stephanie Russo as Associate Director of

---

[1] On June 27, 2018, Judge Feuerstein ordered this case be consolidated with the case bearing the docket number 18-2677 and "directed [plaintiff] to file a consolidated amended complaint that addresses all facts and claims." Order dated June 27, 2018. Defendants argue that plaintiff's amended complaint exceeds the district court's order as plaintiff has added additional facts and claims. *See* DE 59-1 at 8; DE 60-4 at 5. Nevertheless, this report and recommendation addresses all arguments raised by the parties.

2

Perioperative Surgical Services, a top-level manager position to which plaintiff reported. *Id.* at ¶¶ 56–59. Plaintiff claims Russo pressured three older employees to resign from their positions at the Hospital. *Id.* at ¶ 68–70. At the same time, Russo allegedly treated younger staff more favorably, in terms of assignments, break leave, and benefits. *Id.* at ¶ 71. Plaintiff further alleges that Northwell, the Hospital, Russo, Andrew J. Mitchell, Monica Chestnut-Rauls, Mellissa Truce, and Elissa Franklin (together the "Northwell Defendants") engaged in discrimination and retaliation against her. Purportedly, Russo told plaintiff she "wanted new blood in the OR," called plaintiff "an old battle ax and an old dog," and called plaintiff "an old dog who didn't want to learn new tricks." *Id.* at ¶ 103. Because plaintiff had no prior disciplinary history, Russo had to create a record. *Id.* at ¶ 75.

Russo then retaliated against plaintiff after she provided a list of safety and health issues to management, including lack of supplies and equipment necessary for surgery and three staff members underperforming their duties. *Id.* at ¶ 76–78. Several staff and surgeons reported these issues to plaintiff on June 6, 8, and 15, 2016. *Id.* at ¶¶ 77, 79. Plaintiff relayed these issues to Russo on June 15, 2016. *Id.* at ¶ 81. Two days later, Russo falsely accused plaintiff of bullying, and, as a result, plaintiff's "'professionalism' was in question" and plaintiff was immediately terminated from her position as a charge nurse. *Id.* at ¶¶ 81–82. The Hospital conducted no investigation into the bullying allegations prior to removing plaintiff from her position. *See id.* at ¶¶ 105–112.

Eventually, Jacqueline Kelly, a 31-year-old nurse, took over the charge nurse position. *Id.* at ¶¶ 93–94, 101–102. In addition to losing her preferred schedule and raise, plaintiff was then assigned the heaviest caseload without assistance and denied robotics training ordinarily

3

provided to younger employees. *Id.* at ¶¶ 117–121. In denying plaintiff the robotics training, Russo told plaintiff "[y]ou're an old battle ax, oops, I mean seasoned employee, go figure it out." *Id.* at ¶ 121. Eventually, a disciplinary meeting was planned regarding the bullying allegations. *Id.* at ¶ 143. Plaintiff requested that defendant New York State Nurses Association (the "Union") provide her with a union representative for the meeting. *Id.* at ¶ 144. Defendant Vladimir Sherman (together with the Union, the "Union Defendants") acted as plaintiff's union representative at the meeting. *See id.* at ¶ 149.

Russo's actions triggered plaintiff's predisposition for irregular heart rhythms. *Id.* at ¶ 122. This dormant condition was allegedly aggravated by the added workload and manual labor. *See id.* at ¶¶ 122–132. Plaintiff requested an accommodation of not working ten hours shifts and less physical labor, to which Russo replied "[a]in't happening." *Id.* at ¶ 135; *see also id.* at ¶¶ 133–137. During the disciplinary meeting related to the bullying allegations, Russo berated plaintiff, leading to a cardiac episode which required treatment in the Hospital's emergency room. *Id.* at ¶¶ 151–155. At the meeting, Russo told plaintiff that "she better not think she's going home because she wasn't feeling well" and "mock[ed] her illness." *Id.* at ¶¶ 151, 153. Assistant Director, Ita Barry, had to intervene to stop Russo. *Id.* at ¶ 152.

After the disciplinary meeting, the Union filed grievances on plaintiff's behalf against Northwell. *Id.* at ¶¶ 160–161. Plaintiff also escalated the issue to defendant Chestnut-Rauls about the discrimination and lack of accommodation. *Id.* at ¶¶ 172–172. Plaintiff met again with Russo, who asked whether plaintiff would accept a verbal warning instead of a written warning. *Id.* at ¶¶ 173–181. A meeting with Chestnut-Rauls followed. *Id.* at ¶¶ 185–192. At both meetings, plaintiff refused to accept a verbal warning. *Id.* at ¶¶ 183, 192. Chestnut-Rauls then

gave "FMlA [sic] forms" and "steered [plaintiff] in the direction of taking FMLA leave." *Id.* at ¶ 193. Plaintiff also told Sherman, as her union representative, that "she would not accept a vernal [sic] warning." *Id.* at ¶ 201. The Union later accepted the offer of a verbal warning without consulting plaintiff, who was informed of this settlement six months later. *Id.* at ¶¶ 419–422.

Plaintiff then alleges the Northwell Defendants interfered with her FMLA rights by disciplining her for six absences related to medical visits. *Id.* at ¶¶ 206–209. Plaintiff was absent from work six times but was not disciplined for these absences until after the disciplinary meetings with Russo and Chestnut-Rauls. *Id.* at ¶¶ 206–207. This "rigid attendance policy" was enforced, "[n]otwithstanding [plaintiff's] rights under the FMLA and ADA." *Id.* at ¶¶ 218–219. Russo chose to "right [sic] plaintiff up" because plaintiff had violated the Hospital's attendance policy, despite plaintiff providing proof that her absences were for medical reasons. *Id.* at ¶¶ 210, 222.

After seeing additional safety issues compromising patient safety, plaintiff wrote to defendant Mitchell, the President of the Hospital. *Id.* at ¶¶ 224–226. Mitchell refused to meet with plaintiff, who claims that the discrimination worsened including denied breaks, early release time, and medical appointments. *Id.* at ¶ 227–228.

A few weeks later, plaintiff filed a charge with the New York State Department of Human Rights ("NYSDHR") and the EEOC. *Id.* at ¶¶ 229–231. Defendant Frobel Chungata was the regional director of the NYSDHR handling the investigation. *See id.* at ¶¶ 233. Chungata issued a determination of no probable cause. *Id.* at ¶¶ 238–239. As a result, plaintiff was precluded from filing state law claims. *Id.* at ¶ 247.

While the NYSDHR investigation was ongoing, the Northwell Defendants retaliated

5

against plaintiff for filing the charge with the NYSDHR, including assigning plaintiff a heavier caseload and lowering her evaluation ratings. *Id.* at ¶ 248. As a result of that retaliation, plaintiff filed a second charge with the EEOC. *Id.* at ¶ 249. Plaintiff then alleges further retaliation as a result of the filing of the second charge. *Id.* at ¶¶ 250–251.

Based on these allegations, plaintiff purports to set forth thirteen claims for relief: (1) age discrimination under the ADEA, (2) failure to accommodate under the ADA, (3) retaliation under the ADA, (4) hostile work environment under the ADA, (5) interference with rights under the ADA, (6) interference with rights under the FMLA, (7) retaliation under Title VII, (8) Employee Retirement Income Security Act ("ERISA") violations, (9) a Section 301 "hybrid claim," (10) a Section 1983 claim, (11), a Section 504 claim, (12), a Section 741 claim, and (13) intentional infliction of emotional distress.

## DISCUSSION

### I. NORTHWELL DEFENDANTS

#### A. Service on the Individual Defendants

The individual Northwell Defendants—Mitchell, Russo, Chestnut-Rauls, Truce, and Franklin—argue that service upon them was defective because plaintiff failed to file proof of service of the summons and complaint. DE 60-4 at 23–25.

Plaintiff attempted to serve the individual Northwell Defendants at their actual place of business. *See* DE 7 at 3–4. While the Federal Rules do not allow individuals to be served at their place of business, they allow for service to be completed in any manner allowed by the rules of the state in which the federal court sits. *See* Fed. R. Civ. P. 4(e)(1). New York law provides for service at an actual place of business but, to perfect such service, "proof of such

service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing." C.P.L.R. 308(2).

Plaintiff filed the original complaint on November 14, 2017, and, to date, over 20 months later, no proof of service has been filed. As a result, plaintiff has failed to comply with the C.P.L.R. requirement to file proof of service within twenty days.[2] "Because failure to file proof of service is a jurisdictional defect" under C.P.L.R. 308(2), the claims against the individual Northwell Defendants should be dismissed due to insufficient service of process. *See Pope v. Rice*, No. 04 Civ 4171(DLC), 2005 WL 613085 at *15 (S.D.N.Y. Mar. 14, 2005) (dismissing claims against individual defendant where service was defective); *see also Miss Jones, LLC v. Viera*, 18-CV-1398-NGG-SJB, 2019 WL 926670 at *3–4 (finding service insufficient under C.P.L.R. 308(2) where plaintiff filed proof of service 32 days after service of the summons and complaint), *adopted by* 2019 WL 955279 (E.D.N.Y. Feb. 26, 2019); *Creative Kids Far East Inc. v. Griffin*, 15-cv-06027 (NSR), 2016 WL 8710479 at *2 (S.D.N.Y. Jan. 22, 2016) ("substituted service in New York is only 'complete' upon the expiration of ten days after proof of service is filed"); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 660 (S.D.N.Y. 1997) (granting motion to dismiss where plaintiff "failed to file a proof of service with the clerk within twenty days . . . [and], thus, [plaintiff] has failed to effect proper service.").

Plaintiff offers only the unsupported assertion that "failure to file proof of service is not, by itself, cause for dismissal." DE 60-6 at 28. Therefore, the Court should dismiss all claims against the individual Northwell Defendants.

---

[2] Moreover, it appears that no summons has issued, let alone been served, for the Consolidated Amended Complaint.

7

### B. Timely Filing

The Northwell Defendants argue that plaintiff has pleaded contradictory allegations regarding whether her ADEA and ADA claims were timely filed. DE 60-4 at 8. However, the Consolidated Amended Complaint plainly alleges that "[t]he EEOC issued a Notice of Right to Sue Letter on August 14, 2017, with respect to the first Charge." DE 44 at ¶ 14. While the Northwell Defendants argue that plaintiff must attach the right to sue letter, it is sufficient to allege that the letter was issued on a certain date. *See Hall v. Jewish Home & Hosp.*, 16 Civ. 9881(DAB), 2017 WL 5665660 at *4 (S.D.N.Y Nov. 15, 2017) (dismissing complaint where "[p]laintiff here neither attaches a right-to-sue-letter nor alleges in the Complaint that she received one."). Thus, the Northwell Defendants' motion predicated on this argument should be denied.

### C. Failure to State a Claim

Northwell argues that several of plaintiff's claims fails to state a claim for relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In addition to the face of the complaint, "the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citation omitted).

8

   1. *ADA Failure to Accomodate Claim (Second Claim for Relief)*

Northwell argues that plaintiff did not identify failure to accommodate in her first EEOC charge and, thus, she has failed to exhaust her administrative remedies. DE 60-4 at 17. "Exhaustion of administrative remedies . . . [is a] precondition[] to filing an ADA action in federal court." *Cohn v. Keyspan Corp.*, 713 F. Supp. 2d 143, 155 (E.D.N.Y. 2010) (Feuerstein, J.). "[A] district court only has jurisdiction to hear claims brought pursuant to the ADA that are either: (i) contained in the EEOC charge; or (ii) 'reasonably related' to the claims in the EEOC charge." *Wilson v. Southampton Hosp.*, No. 14-cv-5884(ADS)(GRB), 2015 WL 5124481 at *9 (E.D.N.Y. Aug. 28, 2015) (Spatt, J.).[3] A careful reading of the 2016 charge fails to reveal any allegations related to a failure to grant an accommodation. Initially, Plaintiff failed to check the box for "[d]enied me an accommodation for my disability" and the written portion of her charge references only age discrimination and retaliation for internal reporting.[4] DE 60-3 at 21–22. The written portion makes no reference to a request for or failure to grant an accommodation. *See id.* As a result, the failure to accommodate claim was not contained in the EEOC charge.

Nor is the failure to accommodate claim reasonably related to the matters contained in the EEOC charge. "[T]here are three types of situations where claims not alleged in an EEOC charge are 'reasonably related' to those that were contained in the EEOC charge, and are thus

---

[3] The Court can properly consider the EEOC charge on a motion to dismiss without converting it to a motion for summary judgment. *Wilson v. Wilson v. Southampton Hosp.*, No. 14-cv-5884(ADS)(GRB), 2015 WL 5124481 at *7 (E.D.N.Y. Aug. 28, 2015) ("[T]he Court has little difficulty concluding that the . . . EEOC Charge and the Right to Sue Letter clearly fall within recognized categories of documents that are appropriate to consider on a Rule 12(b)(6) motion").
[4] While plaintiff filed her charge with New York state, not the EEOC, this entire analysis "applies with equal force when the charge is filed with the 'equivalent state agency,' such as the New York State Division of Human Rights." *White v. Roosevelt Union Free Sch. Bd. of Educ.*, 15-CV-1035 (JS) (SIL), 2016 WL 4705674 at *3 (E.D.N.Y. Aug. 8, 2016), *adopted by* 2016 WL 4703661 (Sept. 8, 2016).

properly presented to a district court." *Wilson*, 2015 WL 5124481 at *9.  "The first situation is where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.  The second situation is where a claim alleges retaliation against the employee for filing an EEOC charge.  The third situation is where a claim alleges 'further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'"  *Id.*  The only applicable situation here is the first.

Here, the conduct complained of in the EEOC charge would not reasonably fall within the scope of the EEOC investigation.  As the court noted in *Wilson*, "discrimination based on age . . . is conceptually distinct from discrimination based on a disability.  It is also materially different from a claim based on discriminatory retaliation."  *Id.* at *10.  Applying that reasoning, the court dismissed an ADA discrimination claim where the EEOC charge referenced only discrimination based on sex, age, and sexual orientation.  *Id.* at *5–6, *12.  Similarly, plaintiff's EEOC charge references only age discrimination and retaliation for internal reporting.  DE 60-3 at 21–22.  Because it is "materially different from a claim based on a disability," the failure to accommodate claim is not reasonably related to the EEOC charge, and the Court should grant the motion to dismiss the Second Claim for Relief.  *See id.*[5]

   2. *ADA Hostile Work Environment Claim (Fourth Claim for Relief)*

Northwell moves to dismiss the Fourth Claim for Relief arguing that plaintiff has failed to sufficiently plead a hostile work environment claim.  DE 60-4 at 20.  The Second Circuit was recently "persuaded by our sister Circuits, which have reasoned that claims for hostile work

---

[5] Defendants further argue that, by filing a claim under NYLL section 741, plaintiff has effectively elected that remedy and is barred from filing the failure to accommodate claim under the ADA.  This argument presents certain complexities which need not be resolved here, given the clear failure to exhaust administrative remedies.

10

environment are actionable under the ADA." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019).

"To prevail on a hostile work environment claim [under the ADA], [plaintiff] must show (1) that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Id.* (citation and quotations omitted). "Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.*; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "Even an isolated act may be so serious that it requires the conclusion that the terms and conditions of employment were altered." *Id.* "A plaintiff alleging a hostile work environment claim under the ADA, therefore, must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* "Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with [the plaintiff's] work performance." *Id.* Northwell argues that plaintiff "makes no plausible allegations that meet this standard" because she pleads only "trivial and petty work annoyances that cannot support a claim for harassment." DE 60-4 at 21.

This argument ignores allegations that Russo berated plaintiff with such severity that it resulted in a cardiac incident requiring emergency treatment. *See* DE 44 at ¶¶ 151, 153.

11

"Usually, a single isolated instance of harassment will not suffice to establish a hostile work environment unless it was 'extraordinarily severe.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (citation omitted). However, courts have found such extraordinarily severe instances. *See Howley*, 217 F.3d at 153–154; *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 323–324 (E.D.N.Y. 2014) (Spatt, J.). For example, in *Howley*, the Second Circuit that a single instance of chastisement was sufficiently severe to survive a summary judgment motion. *Id.* at 154. Similarly, in *Kohutka*, the district court found that individual instances of sexual harassment were sufficient to survive summary judgment. *Kohutka*, 994 F. Supp. 2d at 324.

Here, like in *Howley* and *Kohutka*, plaintiff's alleged incident was severe and physically impactful, and had implications well beyond the immediate fallout. DE 44. at ¶ 152; *id.* at ¶¶ 158, 363 ("[i]n the ensuing days and months, Ms. Colletta became the brunt of jokes and comments among OR staff that Russo was on a witch hunt and that Ms. Colletta was the witch being hunted"). "The line between complaints that are easily susceptible to dismissal as a matter of law and those that are not is indistinct," but, here, plaintiff has pleaded enough that this cause of action should survive a motion to dismiss. *See Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012). Thus, the Court should deny the motion to dismiss the Fourth Claim for Relief.

3. *ADA Interference Claim (Fifth Claim for Relief)*

Northwell moves to dismiss the Fifth Claim for Relief arguing that plaintiff has pleaded no facts to suggest that Northwell interfered with her ADA rights. DE 60-4 at 21–22. Section 503(b) of the ADA provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

12

42 U.S.C. § 12203(b). "Neither the Supreme Court nor the Second Circuit has yet outlined a test for an interference claim under the ADA." *E.E.O.C. v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 204 (D. Conn. 2017). "[C]ase law interpreting § 503(b) is sparse, but the plain words of the statute, however, preclude a party from intimidating or coercing another party not to exercise his rights under the ADA, as well as barring interference against a person who has exercised his rights under the ADA." *Id.* (citing *Briemhorts v. Educ. Testing Serv.*, No. 99-cv*3387, 2000 WL 34510621 at *7 (N.D. Cal. Mar. 27, 2000)). "The Third Circuit and Ninth Circuit have found that Section 503(b) 'arguably sweeps more broadly than' Section 503(a)." *Id.* (collecting cases).

"[C]ourts have noted that the ADA's anti-interference provision is similar to a provision in the National Labor Relations Act, 29 U.S.C. § 158, and that interpretations of the NLRA can serve as a useful guide to interpreting similar language in the ADA, as both are part of a wider statutory scheme to protect employees in the workplace nationwide." *Id.* (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 570 (3d Cir. 2002)). "The Second Circuit has found that an employer's conduct violates the NLRA's prohibition on interference if, under all the existing circumstances, the conduct has a reasonable tendency to coerce or intimidate employees, regardless of whether they are actually coerced." *Id.* (citing *N.Y. Univ. Med. Ctr. v. N.L.R.B.*, 156 F.3d 405, 410 (2d Cir. 1998)). "This is an objective test that does not turn on whether any of the affected employees were actually deterred from exercising their rights." *Id.*

Plaintiff alleges that Northwell's use of a "key employee" letter interfered with her ADA rights. Yet, plaintiff pleads no facts to suggest that the key employee letter impacted her ability to take medical leave, to return from medical leave, or otherwise hampered any right to which

13

she is entitled under the ADA. DE 60-4 at 22. Plaintiff had already taken leave when she received the letter. DE 144 at ¶¶ 330, 371. Plaintiff offers only the unpersuasive claim that "Northwell's actons [sic] had the effect of making question [sic] think or have doubts as to whether Northwell was actually treating her ADA leave as an ADA leave which had more protection." DE 60-6 at 25. Such a rationale is plainly insufficient under an "objective test." *Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d at 204. Thus, the Court should dismiss the Fifth Claim for Relief

    4. *FMLA Interference Claim (Sixth Claim for Relief)*

Northwell argues that the Sixth Claim for Relief must be dismissed because plaintiff failed to give notice of her intent to take FMLA leave and that she was not denied FMLA leave. DE 60-4 at 22. Under the FMLA, "it is 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.'" *Bergman v. Kids by the Bunch Too, Ltd.*, 14-CV-5005 (DRH)(SIL), 2018 WL 1402249 at *9 (E.D.N.Y. Feb. 16, 2018), *adopted by* 2018 WL 1404324 (E.D.N.Y. Mar. 20, 2018). Among other things, in order to plead an interference claim under the FMLA, plaintiff must allege: "that she was denied benefits to which she was entitled under the FMLA." *Id.* (citing *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016)).

Plaintiff alleges that Northwell approved the six absences for doctor's appointments. DE 44 at ¶ 208. Moreover, Russo gave plaintiff FMLA forms and "steered [her] in the direction of taking FMLA leave." *Id.* at ¶ 193. As a result, she has not plausibly alleged she was denied benefits under the FMLA, and the Court should dismiss the Sixth Claim for Relief.

14

*5. Title VII Retaliation Claim (Seventh Claim for Relief)*

Northwell argues that the Seventh Claim for Relief must be dismissed because plaintiff fails to allege any conduct that violates Title VII. DE 60-4 at 26. Title VII prohibits discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, plaintiff "fails to allege facts suggesting that [Northwell] was motivated by an intent to discriminate based upon his membership within a class protected by Title VII." *See Davis v. N.Y. City Dep't of Corr.*, 17-CV-3863 (MKB), 2017 WL 5634123 at *4 (E.D.N.Y. Nov. 22, 2017). Plaintiff provides no opposition to this aspect of Northwell's motion. *See* DE 60-6. Thus, the Court should dismiss the Seventh Claim for Relief.

*6. ERISA Claim (Eighth Claim for Relief)*

Construed in the most generous light, plaintiff attempts to plead ERISA claims based upon purported improprieties in connection with (1) her sick and vacation time and (2) requests for ERISA plan information.

First, any ERISA claim related to plaintiff's "accrued vacation and sick time" fails as a matter of law. *See* DE 44 at ¶¶ 355, 400–401. "Vacation benefits paid from an employer's general assets do not constitute an employee benefit plain under ERISA." *United Auto., Aerospace, and Gr. Implement Workers of Am., Local 33 v. R.E. Dietz Co.*, 996 F.2d 592, 597 (2d Cir. 1993); *see also Cohen v. Local 338-RWDSU/UFCW*, No. 08 Civ. 01151(RJH)(FM), 2010 WL 3199695 at *10 (S.D.N.Y. Aug. 12, 2010). The same applies to sick leave benefits. *Shea v. Wells Fargo Armored Serv. Corp.*, 810 F.2d 372, 376 (2d Cir. 1987) ("The regulations thus expressly exclude from ERISA coverage traditional sick leave and vacation wages paid out of an employer's general operating funds").

15

Second, Northwell argues that plaintiff's claims emanating from information requests related to disability plans are "so vague and poorly pled that it is impossible to guess whether any ERISA provision might apply to it." DE 60-4 at 28. ERISA provides for penalties to be assessed against a plan administrator for failure to provide different categories of information found in various ERISA provisions. *See* 29 U.S.C. § 1132(c)(1). But, here, plaintiff provides no facts regarding what information she seeks, besides oblique references to "short and long term disability" and a "portion of the paper work" that Northwell has failed to complete. DE 44 at ¶ 399. These allegations are vague enough that they do not "give the defendant fair notice of what the claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Court should dismiss the Eighth Claim for Relief.

## II.     UNION DEFENDANTS

Sherman, as plaintiff's former union representative, and the Union both argue that the breach of the duty of fair representation claim against them both fails as a matter of law.[6] As a preliminary matter, Sherman correctly argues that, as a matter of law, plaintiff cannot file a breach of the duty of fair representation against him. *See Fowlkes v. Ironworkers Local 40*, 790, F.3d 378, 388, n.10 (2d Cir. 2015) ("[a] duty of fair representation cause of action does not lie against individual defendants . . . [s]uch a claim may be stated only against a union") (citing *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999)). Thus, the Court should dismiss the claim against Sherman.

---

[6] Plaintiff has filed a hybrid cause of action under section 301 of the Labor Management Relations Act, which requires (1) an alleged breach of a collective-bargaining agreement by the employer and (2) an alleged breach of the duty of fair representation by the Union. *Herr v. Cineplex Odeon Corp.*, 1994 WL 75008 at *3 (S.D.N.Y. Mar. 4, 1994) (citing *Vaca v. Sipes*, 386 U.S. 171, 186 (1967)).

The Union argues that plaintiff has failed to sufficiently plead a breach of the duty of fair representation. "The [National Labor Relations Act] has been interpreted to impose a 'duty of fair representation' on labor unions, which a union breaches when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Ramlogan v. 1199 SEIU*, No. CV-11-0125 (SJF)(WDW), 2012 WL 113564 at *3 (E.D.N.Y. Jan. 11, 2012) (Feuerstein, J.) (citation and quotations omitted); *see also Barrett v. Local 804 Union*, 18-CV-2046 (MKB), 2019 WL 2579018 at *5–7 (E.D.N.Y. June 24, 2019). "The duty of fair representation requires the union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Ramlogan*, 2012 WL 113564 at *3.

"A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Id.* at *4. "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Id.* A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Id.* "Neither 'tactical errors' nor mere negligence are sufficient to show a breach of the duty of fair representation." *Id.* "Any substantive examination of a union's performance must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Id.*

Here, plaintiff alleges the Union breached the duty of fair representation by settling her grievance against her wishes and by failing to keep her apprised of the status of the grievance. DE 44 at ¶¶ 419–422. However, "the failure to keep a grievant informed of the status of a

17

grievance is not a breach of the duty of fair representation." *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 404–05 (S.D.N.Y. 2000); *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 197 (E.D.N.Y. 1998) (Spatt, J.); *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1230 (E.D.N.Y. 1990) (Glasser, J.). Similarly, "a union does not act unfairly when it fails to consult with or advise a grievant of its bargaining activities, nor in the legitimate exercise of its discretion, need it obtain the employee's consent before settling a grievance." *Cover v. Am. Postal Workers Union, AFL-CIO*, 05 Civ. 2430 (LMS), 2006 WL 8441397 at *7 (S.D.N.Y. July 21, 2006) (citing *Caputo*, 730 F. Supp. at 1230). As a result, plaintiff fails to state a claim for relief, and the Court should grant the Union Defendants' motion to dismiss.

### III.     NYDHR DIRECTOR CHUNGATA

Plaintiff endeavors to assert a claim against Froebel Chungata, the Regional Director the New York State Division of Human Rights, for issuing a determination of "no probable cause." DE 57-1 at 6. However, "officials of state administrative agencies that receive discrimination complaints, like the [NY]SDHR, enjoy absolute immunity when they perform the function of investigating charges of discrimination and in making determinations of whether probable cause exists." *Id.* at 6. "Plaintiff cannot pursue a section 1983 individual-capacity claim against [Chungata] based on the decision dismissing plaintiff's [NY]DHR complaint, because [his] decision was made in a quasi-judicial capacity." *See D'Ambrosio v. Bast Hatfield, Inc.*, No. 6:12-CV-1985 (NAM/TWD), 2015 WL 6454791 at *5 (N.D.N.Y. Oct. 26, 2015) (citing *Kirkland v. City of Peekskill*, 651 F. Supp. 1225, 1230 (S.D.N.Y. 1987) ("the NYSDHR is vested by statute with plenary adjudicatory powers, and functions in a quasi-judicial capacity when it processes discrimination complaints"), *aff'd*, 828 F.2d 104 (2d Cir. 1987)); *see also White v.*

18

*Martin*, 26 F. Supp. 2d 385, 388–392 (D. Conn. 1998) (dismissing section 1983 claims against Connecticut Commission on Human Rights and Opportunities directors because they were entitled to absolute immunity "in investigating charges of discrimination and making determination of whether probable cause exist[ed]"). Plaintiff offers no response. Thus, the section 1983 claim against Chungata should be dismissed.

Therefore, the Court should grant Chungata's motion to dismiss.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Court:

1. Grant the motions to dismiss by the individual Northwell Defendants, the Union Defendants, and NYSDHR Director Chungata; and

2. Grant the motion to dismiss by Northwell as to the Second, Fifth, Sixth, Seventh, and Eighth Claims for Relief.

## OBJECTIONS

A copy of this Report and Recommendation has been provided to the defendants. **Counsel for defendants is directed to serve a copy of this Report and Recommendation upon *pro se* plaintiff and file proof of service.** Any written objections must be filed with the Clerk of the Court within fourteen (14) days of this report. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.** *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely

object); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *cf. Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). This is particularly true, where, as here, a party has been "warned of the consequences of not objecting to the Magistrate's findings." *Mejia*, 2018 WL 4847199, at *1.

Dated: Central Islip, New York
      August 19, 2018

                                        /s/ Gary R. Brown
                                        GARY R. BROWN
                                        United States Magistrate Judge